**Barbara B. Comerford, Esq.**
**Law Offices of Barbara B. Comerford, P.A.**
**A Professional Corporation**
**45 Eisenhower Drive, 2ⁿᵈ Floor**
**Paramus, NJ 07652**
**(201) 485-8806**
*Attorneys for Plaintiff Louise Vartanian*

**Sara Kaplan-Khodorovsky, Esq.**
**Green Savits, LLC**
**25B Vreeland Road, Suite 207**
**Florham Park, NJ 07932**
**(973) 695-7777**
*Attorneys for Plaintiff Louise Vartanian*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| Louise Vartanian<br><br>                    **Plaintiff,**<br>   v.<br><br><br>**First Reliance Standard Life Insurance Company**<br><br><br>                    **Defendant.** | **Civil Action No.**<br><br>**COMPLAINT** |

Plaintiff Louise Vartanian (hereinafter "Plaintiff" or "Ms. Vartanian"), by way of Complaint against the Defendant alleges as follows:

1

## JURISDICTION

1.    Plaintiff, Louise Vartanian, (hereinafter "Ms. Vartanian" or "Plaintiff"), is a resident of Holmdel, New Jersey.

2.    Defendant, First Reliance Standard Life Insurance Company (hereinafter "Defendant" or "Reliance") is an insurance company organized and existing under the laws of the United States, with a principal place of business at 590 Madison Avenue, 29th Floor, New York, New York 10022.

3.    By virtue of her employment with Sumitomo Mitsui Banking Corporation (SMBC), Ms. Vartanian was eligible to participate in SMBC's Long Term Disability Insurance Plan, Group Contract Number LTD 131215 (hereinafter "LTD Policy" or "LTD Plan" and attached hereto as of Exhibit A.)  The policy was issued by Reliance and the policyholder is SMBC.

4.    Reliance is the fiduciary responsible for paying benefits and administering claims under the LTD Plan.

5.    By virtue of her employment with SMBC, Ms. Vartanian was also  eligible to participate in SMBC's Group Life Insurance Plan,  Group Contract Number GL 161084 (hereinafter "Life Insurance Policy" or "Life Insurance Plan"). The policy was issued by Reliance and the policyholder is SMBC.

6.    The Life Insurance Policy contains a waiver of premium (hereinafter "LWOP") benefit for disabled insureds who have ceased working and meet the criteria for disability under the Life Insurance Plan.   Under the Policy's LWOP provision, life insurance coverage continues under specific terms and free of premiums for insureds who meet its definition of disability.

7.    Reliance is the fiduciary responsible for paying benefits and administering claims under the Life Insurance Plan.

2

8.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) in that the claims herein arise under the Employee Retirement Income Security Act, 29 U.S.C § 1132 (a)(1)(B).

9.   Venue is proper in this Court because Plaintiff resides in New Jersey.

## ESSENTIAL FACTS

10. Ms. Vartanian is a 63-year-old woman with a Bachelors Degree in Operations Research and a Masters in Business Administration.  She has been totally disabled under the LTD and Life Insurance Policies since on or about April 22, 2021 due to Myalgic Encephalomyelitis/Chronic Fatigue Syndrome (hereinafter "ME/CFS") and  Long-Haul COVID-19 along with comorbid illnesses including Fibromyalgia; Small Fiber Neuropathy; Mast Cell Activation Syndrome; Diabetic Polyneuropathy; and Sarcoidosis

11. Prior to her disability, Ms. Vartanian worked as Executive Director/Head of Procurement Operations at SMBC.

12. In her predisability occupation, Ms. Vartanian led strategy, planning, business process and data transformation programs for the Americas Division at MSBC; and conducted industry reviews of leading procurement Source to Pay management systems including request for proposal, proof of concept and execution of agreements for the selected vendor and implementation partner.  She partnered with businesses and technology to enable integration with backend enterprise resource planning, and developed and managed a vendor risk management program. This included establishing a target operating model, strategic roadmap, overseeing a vendor service inventory baseline and changes to the risk methodology, and selecting a system to streamline the workflow.  She was required to travel as needed.

13. Mrs. Vartanian was required to analyze, synthesize, and report large amounts of

complex data  to senior leadership. She had to prepare daily, weekly, and monthly reports and constantly communicate in writing.  She had to frequently sit, reach, finger, grip, grasp, stand, and walk for prolonged periods of time.

14.   As her illnesses progressed, Ms. Vartanian struggled with sitting at her computer, keyboarding and dealing with the flood of information she reviewed.  Sitting for such long periods at a computer using her fingers and hands resulted in debilitating fatigue and headaches. Her cognitive impairment became increasingly debilitating.

15. On or about April 22, 2021, Ms. Vartanian left work and filed for Short Term Disability ("STD") benefits through third party administrator Matrix Absence Management.  Matrix Absence Management is Reliance's sister company and is branded under the "Reliance Matrix" umbrella. Both companies are subsidiaries of the Tokio Marine Group.

16. Over the course of her STD claim, Ms. Vartanian's treating physicians consistently documented symptoms of dizziness, numbness, tingling of the face, headaches, fatigue at rest, post-exertional fatigue, orthopnea, shortness of breath, pain in muscles and joints, short term memory loss, and diminished concentration.

17. Ms. Vartanian began treating with Board Certified Infectious Disease Specialist Susan Levine, M.D. in or about August of 2021.  An expert on ME/CFS and the illness the often coincides with Fibromyalgia, Dr. Levine is, *inter alia*, the former head of the CFS Advisory Committee to the United States Department of Health and Human Services.

18. On Dr. Levine's initial physical examination, her blood pressure was low 98/60, she had ¼ x ¼ left tenderness in anterior cervical lymph node, ¼ x ¼ bilateral inguinal lymph node tenderness, 4/5 strength in both upper arms, decreased patellar reflexes bilaterally, abnormal

tandem gait and neuropositive Rhomberg consistent with dysautonomia. She had difficulty counting backwards by serial 7s consistent with her reports of cognitive impairment.

19. Dr. Levine ordered laboratory testing, which revealed abnormally elevated Epstein Barr Virus (EBV) and HHV 6 Antibodies.

20. Based on her findings and Ms. Vartanian's medical history, together with her expertise in the illness, Dr. Levine diagnosed Ms. Vartanian with ME/CFS, Fibromyalgia, and Mast Cell Disorder.

21. Ms. Vartanian underwent Cardiopulmonary Exercise Testing ("CPET") with Betsy Keller, Ph.D. on October 25 and 26, 2021.

22. CPET is recognized by the medical community and the Courts as the gold standard in assessing disability due to ME/CFS. It entails two tests on a cycle ergometer on two consecutive days and evaluates exercise tolerance through key metrics over each test.

23. Ms. Vartanian's CPET objectively confirmed impaired cardiopulmonary response to exercise and inability to exceed modest levels of physical exertion without causing a crash. Peak oxygen consumption, or VO2peak indicated significant impairment and was equivalent to the average inactive 88 year old female. Her ventilatory anaerobic threshold (VAT) was very low, indicating the speed at which her body ceases to rely efficiently on oxygen during exercise and also objectively confirming significant impairment and disabling fatigue.

24. Workload@VAT as measured by CPET is the workload that corresponds to the work level at which anaerobic energy production increases. Mrs. Vartanian's workload@VAT decreased 39% on test 2 from a low 57W in test 1 to a very low 35W during test 2. A significant reduction in Worklad@VAT on test 2 is supportive of post exertional malaise (PEM) and means that substantially lower levels of exertion, when experiencing PEM will provoke a significant

increase in anaerobic energy production and illness symptoms.

25. Results from the testing revealed chronotropic incompetence, or an abnormal cardiopulmonary response to exercise that is consistent with dysautonomia.

26. Dr. Keller concluded:

The collective results of this test indicate that Mrs. Vartanian's ability to carry out normal daily activities is limited and renders her unable to perform even sedentary-level work on a sustained basis. Evidence from Mrs. Vartanian's Job description, and the results of this test, indicate that efforts to perform her own jab requirements would not be possible without exacerbating her illness symptoms, including her cognitive dysfunction, which is central to performance of her job. More specifically, the response to this two-day cardiopulmonary exercise test indicates marked dysautonomia contributing to impaired blood flow to muscles, heart and brain, resulting in many of her symptoms such as profound fatigue, pain, shortness of breath, cognitive dysfunction and post-exertional malaise. As such, Mrs. Vartanian would not tolerate any type of sedentary work, full or part-time, on a sustained basis. Any attempt to do so would provoke her symptoms. The energy requirements to perform work in a sustained manner would further exacerbate her symptoms and illness progression and necessitate that she misses significant time from work. For these reasons, Mrs. Vartanian is unable to perform her own occupation, full or part-time."

27. On November 8, 2021, Ms. Vartanian underwent cognitive testing with clinical Neuropsychologist Wilfred van Gorp, Ph.D. Dr. van Gorp performed a full battery of testing, which objectively confirmed impairments in essential areas necessary to perform her job including attention, verbal fluency, and processing speed.

28. Based on his testing, Dr. van Gorp concluded, "Mrs. Vartanian is unable to work part-time or full-time due to her cognitive and physical impairment. Mrs. Vartanian's impaired attention, vigilance, verbal fluency, and word finding abilities should be viewed in the context of her chronic fatigue syndrome, dysautonomia, and mass cell activation."

29. On November 12, 2021, Dr. Levine filled out an Attending Physician Statement at the request of Reliance Standard. She explained that Ms. Vartanian's primary diagnosis was Chronic

6

Fatigue Syndrome. Dr. Levine noted disabling symptoms of severe exhaustion, muscle pain, and memory loss. Dr. Levine noted Ms. Vartanian had fibromyalgia impacting her condition.

30. Dr. Levine noted s objective tests including positive Epstein Barr and HHV-6 results, as well as 2- Day Cardiopulmonary Testing. She concluded that Mrs. Vartanian was not capable of sedentary work.

31. Matrix approved Ms. Vartanian's STD claim through its maximum duration and transitioned the claim to Reliance for LTD consideration.

32. The following definition of disability is provided in the LTD Policy:

*"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:*

   *(1) During the elimination period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation."*

  *(2) After a monthly benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation.  We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of performing only the material duties on a part-time basis or part of the material duties on a full-time basis.* (emphasis added)

33. The LTD Policy defines "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins.  We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer."

34. The LTD Policy defines "Any Occupation" as "an occupation performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience."

35. The Life Insurance Policy defines disability for waiver of premium purposes as "an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training and experience."

36. Ms. Vartanian's LTD application highlighted her disabling diagnoses including ME/CFS and related symptoms including chronic pain, fatigue, numbness and tinging the face and neck, body aches, orthostatic intolerance, weakness, and headaches, photophobia, memory loss, and impaired concentration.

37. In her application, Ms. Vartanian stated:

*Unfortunately, as my illnesses have progressed since April 13, 2021, I have struggled with sitting at my computer, standing, walking using the keyboard, and dealing with the food of information I analyzed. Sitting and standing for such long periods and using my fingers and hands has resulted in severe body pain and weakness. It has become extremely difficult to continue performing even my basic job demands given my symptoms including increasing debilitating fatigue and orthostatic intolerance As such I have been unable to perform the material duties of my on occupation as an Executive Director* (emphasis added).

38. Following her abnormal CPET, Ms. Vartanian was evaluated by Board Certified Cardiologist Van-Hong Nguyen, M.D. on December 28, 2021. Dr. Nguyen's records document an abnormal EKG with left axis deviation. Echocardiogram documented Aortic Valve Insufficiency.

39. On or about January 3, 2022, Reliance approved Ms. Vartanian's LTD benefits. Reliance's approval relied on a medical review which stated:

8

*Claimant lacks work function at date of loss for workup and treatment head pains and neurological symptoms (brain fog, photophobia, fatigue).  There is exam findings of positive Romberg, abnormal gait, decreased patellar reflexes bilaterally, and mild weakness along with CPET findings of marked dysautonomia with VO2 peak and VAT findings of moderate to severe impairment.*  (emphasis added).

40. Reliance also approved Ms. Vartanian's LWOP claim.

41. On January 21, 2022, Ms. Vartanian presented to the emergency room due to her symptoms  of COVID-19, including recurrent shortness of breath with dizziness. Testing confirmed infection with SARS COVID-19 infection. Chest X-ray revealed right upper lobe, right lower lobe, and left lower lobe interstitial infiltrates.

42. On February 11, 2022, Mrs. Vartanian presented for updated treatment with Dr. Levine. She had experienced a noted setback since getting infected with COVID-19. She had symptoms of ongoing weakness, fatigue, post exertional malaise, head pain, unrefreshing sleep, cognitive dysfunction, allergic reactions, and muscle pain. On physical examination, she had Crimson Crescent, ¼ x ¼ left anterior cervical lymph node, neurological positive Rhomberg, and difficulty counting backwards by serial 7s. Dr. Levine reviewed preliminary laboratory serologies which showed evidence of information with positive von Willebrand Antibody. Dr. Levine opined that Mrs. Vartanian remained disabled.

43. On February 16, 2022, Mrs. Vartanian underwent pulmonary function tests, which showed abnormal pulmonary patterns, and notably reduced lung capacity.

44. On March 21, 2022, Reliance claim representative Kristine Thomas called Ms. Vartanian and wrote, "making a note to claim, that when listening to EE's voicemail, she was

having difficulty speaking and sounded like she was having difficulty getting enough oxygen to speak."

45. Reliance requested Ms. Vartanian's updated medical records in or around March 2022.

46. In addition to medical records, Ms. Vartanian submitted an activities of daily living questionnaire documenting that her symptoms caused difficulty cooking, driving, doing her finances including online banking, and performing light chores.  She noted difficulty remembering names, dates and conversation along with driving directions. She also required multiple breaks throughout the day whenever she did perform tasks.

47. Based upon Ms. Vartanian's medical update, Reliance approved her ongoing benefits in or about April 2022.

48. Following her acute bout with COVID-19, Ms. Vartanian continued to experience exacerbated symptoms as documented by her treating physicians, including but not limited to worsened fatigue; post-exertional malaise; dysautonomia; cognitive impairment; pain; neuropathy; shortness of breath; chest pain; and intractable pneumonia.

49. On June 20, 2022, Mrs. Vartanian received a CT scan of the chest. It showed scattered pulmonary nodules in both lungs.

50. On July 25, 2022, Ms. Vartanian was evaluated by her pulmonologist, Elie Mansour, M.D.  who noted her recent test results and documented sarcoidosis of the lung.

51. On August 9, 2022, Ms. Vartanian returned to Dr. Nguyen.  Dr. Nguyen's records note an abnormal EKG documenting Sinus Tachycardia; anterolateral infarct; and left axis deviation. Physical examination found edema in the left lower extremities. Ms. Vartanian underwent an Exercise Tolerance test, which had to be terminated due to shortness of breath.

52. Ms. Vartanian continued to treat with Dr. Levine, who noted Ms. Vartanian's ongoing disabling symptoms following her infection with COVID-19.

53. Ms. Vartanian was approved for her Social Security Disability Insurance benefits due to her inability to work in any gainful occupation.  Reliance benefited from this approval, enjoying a retroactive reimbursement against, and  ongoing offset of Ms. Vartanian's monthly LTD benefits.

54. On November 9, 2022 following an updated review and roundtable discussion of Ms. Vartanian's LTD claim, Reliance further extended her benefits noting, "Based on Medical Records on file, return to work at this time unlikely."

55. Reliance obtained a review from Nurse Phillips, which now discounted Ms. Vartanian's symptoms including fatigue; vertigo; and shortness of breath as "subjective."  Nurse Phillips made this statement despite the substantial objective correlation of these symptoms including CPET testing; repeated pulmonology tests; neuropsychological testing which it had previously accepted supported disability; Dr. Levine's examination findings including laboratory findings, positive Rhomberg tests; objectively confirmed lung damage due to COVID-19; difficulty counting backwards by serial 7's; and hypotension.

56. Reliance requested an additional update regarding Ms. Vartanian's condition in or about February 2023.

57. On February 22, 2023., Ms. Vartanian visited internist Sunit Desai, M.D., who noted hypotension and decreased air entry into the lungs bilaterally.

58.  Dr. Levine evaluated Ms. Vartanian on or about February 7, 2023 and noted "Mrs. Vartanian experiences daily episodes of fatigue, even following minimal mental exertion or physical exertion.  Some days she is able to walk only 15 minutes without feeling winded, other days she remains housebound.  She experienced pins and needles sensations randomly and

episodically in hands and feet, headaches, short term memory problems and reduced speed of processing new information."

59. On or about April 3, 2023, Ms. Vartanian submitted updated information regarding her disability.

60. On or about April 27, 2023, Dr. Levine certified that Ms. Vartanian remained disabled due to ME/CFS and Long-Haul COVID-19.

61. Reliance subsequently procured the report of its in-house nurse Mary Jane Gray, who claimed that the clinical findings did not support an inability to work despite the substantial objective medical evidence of record.  She mischaracterized Ms. Vartanian's symptoms as "self reported" despite the litany of objective medical evidence  of disabling pain, dysautonomia, neuropathy, cognitive impairment, and fatigue in the record.  She incorrectly claimed that Ms. Vartanian's cardiac stress test was normal despite the fact that Plaintiff was unable to complete that test, and selectively reviewed Ms. Vartanian's update forms to emphasize those functions that she could perform despite their lack of correlation with an ability to perform her own or any other occupation.

62. Based on Nurse Gray's review, Reliance terminated Ms. Vartanian's LTD claim by letter dated May 2, 2023.

63. Reliance's termination of Ms. Vartanian's benefits was arbitrary, capricious and wrong.

64. Despite Reliance's adverse benefit determination, Ms. Vartanian remained disabled under the terms of the LTD and Life Insurance Plans.

65. On May 15, 2023, Ms. Vartanian returned to Dr. Desai, who noted abnormal pulmonary function tests, hypotension, low oxygen saturation, and decreased air entry in the lungs bilaterally. These symptoms persisted at her follow-up visit with Dr. Desai on July 19, 2023.

66. Ms. Vartanian continued to treat with Dr. Levine, who documented ¼ X ¼ anterior bilateral cervical lymph nodes, positive Rhomberg tests; and difficulty counting backwards by serial 7's.

67. Dr. Levine prepared a treatment summary letter documenting Ms. Vartanian's ongoing conditions, symptoms, and disability.

68. On June 26, 2023, Ms. Vartanian underwent repeated neurocognitive testing with Dr. van Gorp.

69. Dr. van Gorp administered a complete battery of testing, which objectively confirmed cognitive impairment in the areas of attention, working memory, processing speed, and memory. Dr. van Gorp noted, "On a simple timed attention task, her performance was in the Extremely Low range and at the <1st percentile, lower than her 6th percentile performance in 2021.  Additionally, on a task of sustained attention and auditory processing speed, her performance was in the 5th percentile, indicating significant impairment."

70. On August 10, 2023, Ms. Vartanian underwent a nerve biopsy due to ongoing neuropathic pain and other symptoms.  The biopsy results were consistent with significant small fiber neuropathy.

71. On September 1, 2023, Plaintiff submitted an appeal of Reliance's LTD and LWOP denials.

72. The initial 45-day period for Reliance to either render a claim determination or request an additional 45-day extension of time under 29 C.F.R. §  2560.503-1(i) elapsed on October 16,

2023. However, Defendants did not seek an extension or render a determination within that time period.

73. On October 18, 2023, Reliance produced file reviews that it procured from psychiatrist Brandon Erdos, M.D. and internist Joseph Palermo, M.D. both writing at the behest of Reliance's paid vendor, MCN.

74. The reports reflect that Reliance received these reports on October 3, 2023 and October 9, 2023, yet failed to produce them for Plaintiff's review until October 18, 2023.

75. Dr. Erdos opined that Ms. Vartanian was not disabled due to a psychiatric disorder, which is correct because her disability is physical.

76. Dr. Erdos is not qualified to give a medical or neuropsychological opinion in this matter because he is a psychiatrist and Ms. Vartanian's disability is physical.

77. Dr. Erdos emphasized normal mental status examinations but ignored the objective evidence of cognitive disability documented by Dr. van Gorp.

78. Dr. Palermo incorrectly claimed that the record did not contain objective proof of physical impairment, despite the substantial objective medical evidence of disability in the record.

79. Dr. Palermo incorrectly claimed that Dr. Levine did not substantiate how Ms. Vartanian satisfies the criteria for ME/CFS, despite Dr. Levine explicitly stating that Ms. Vartanian did meet the Institutes of Medicine Committee's clinical criteria for illness including greater that 6 months' duration of profound fatigue reducing her level of activity to less than 50% of her premorbid activity level, unrefreshing sleep, and cognitive dysfunction including short term memory loss and diminished concentration.

80. Dr. Palermo improperly disregarded the substantial objective and other evidence of disability and incorrectly concluded that the records did not support impairment.

14

81. Dr. Palermo failed to mention Ms. Vartanian's long-haul COVID-19 diagnosis, the objective evidence thereof, and the way it compounded her medical profile to further disable her.

82. Dr. Palermo's review indicates that he lacks the requisite expertise to opine on Plaintiff's disability.

83. Reliance failed to have Ms. Vartanian's cognitive disability assessed by a qualified neuropsychological expert.

84. On October 23, 2023, Plaintiff's counsel responded to Reliance with a missive outlining the incorrect, arbitrary and capricious nature of its experts' conclusions.

85. Counsel's October 23, 2023 missive also includes a rebuttal letter from Dr. van Gorp reiterating the impairments that he objectively documented on neuropsychological examination.

86. On November 21, 2023, Reliance sent a letter upholding its denial of Ms. Vartanian's LTD benefits.

87. In upholding its denial, Reliance relied upon the arbitrary and capricious conclusions of its paid paper reviewers.

88. In upholding its denial of LTD benefits, Reliance relied upon its hired reviewers, and particularly upon the report of Dr. Palermo.   Reliance's determination ignored the substantial objective evidence of disability in the record; improperly disregarded the opinions of Ms. Vartanian's treating providers without a meaningful basis for doing so; relied upon experts who lacked the medical expertise to evaluate her claim; failed to account for all of Ms. Vartanian's symptoms and conditions and how they disabled her individually and together; failed to meaningfully  assess how Ms. Vartanian can work given her impairments;  selectively reviewed the medical records and ignored the substantial medical evidence of disability in the record; failed to adequately explain why it was departing from the Social Security Administration's finding of

disability; and denied her benefits despite the fact that her medical condition objectively deteriorated between the time Reliance approved her claim and the time it terminated her benefits.

89. Reliance upheld its denial of Ms. Vartanian's LWOP benefits on the same bases as its LTD denial.

90. Reliance's determinations on Ms. Vartanian's LTD and LWOP claims were arbitrary, capricious, unlawful, and wrong.

91.    Plaintiff has exhausted her administrative remedies under both Policies.

92. The standard of review in this matter is *de novo.*

### AS FOR A FIRST COUNT

93. Plaintiff incorporates paragraph 1-91 above as if fully set forth again.

94. In upholding its denial of LTD and LWOP benefits, Reliance relied upon its hired reviewers, and particularly upon the report of Dr. Palermo.   Reliance's determination ignored the substantial objective evidence of disability in the record; improperly disregarded the opinions of Ms. Vartanian's treating providers without a meaningful basis for doing so; relied upon experts who lacked the medical expertise to evaluate her claim; failed to account for all of Ms. Vartanian's symptoms and conditions and how they disabled her individually and together; failed to meaningfully  assess how Ms. Vartanian can work given her impairments;  selectively reviewed the medical records and ignored the substantial medical evidence of disability in the record; failed to adequately explain why it was departing from the Social Security Administration's finding of disability; and denied her benefits despite the fact that her medical condition objectively deteriorated between the time Reliance approved her claim and the time it terminated her benefits.

95. By virtue of the foregoing, Defendant, Reliance  has breached the terms of the LTD and Life Insurance Policies, of which the Plaintiff, Louise Vartanian, is a beneficiary, and has

violated the requirements of the Employee Retirement Income Security Act, 29 USC §1132 (a)(1)(B), §502(a)(1)(B) and the applicable regulations promulgated thereunder.

96. Reliance's denial of Ms. Vartanian's LTD and LWOP claims was *de novo* wrong, arbitrary and capricious.

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an Order as follows:

1.   Declaring Plaintiff totally disabled within the meaning of the LTD and Life Insurance Policies.

2.   Ordering the Defendant to immediately place the Plaintiff on claim for total disability benefits under the terms of the LTD and Life Insurance policies retroactive to the date of claim terminations.

3.   Awarding Plaintiff her costs of suit, including reasonable attorney's fees.

4.   Awarding Plaintiff interest on all unpaid benefits and waiving any and all premium charges accruing with respect to said policy of insurance.

5.   Granting such other further relief as this Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates Sara Kaplan-Khodorovsky, Esq. as trial counsel.

## **CERTIFICATION**

I certify that the matter in controversy is not the subject of any other action or arbitration

proceeding, now or contemplated, and that no other parties should be joined in this action.

Green Savits, LLC
25B Vreeland Road, Suite 207
Florham Park, NJ 07932
*Attorneys for Plaintiff Louise Vartanian*

Dated:  April 16, 2024                              _____
                                                    Sara Kaplan Khodorovsky